[No. A129306. First Dist., Div. Three. Dec. 16, 2011.]

KHEVEN LaGRONE, Plaintiff and Respondent, v.
CITY OF OAKLAND et al., Defendants and Appellants.

[No. A130030. First Dist., Div. Three. Dec. 16, 2011.]

KHEVEN LaGRONE, Plaintiff and Appellant, v.
CITY OF OAKLAND et al., Defendants and Appellants.

**COUNSEL**

Deborah Bialosky; and John Russo, City Attorney, for Defendant and Appellant City of Oakland.

Paul Kleven for Plaintiff and Respondent and for Plaintiff and Appellant.

## OPINION

**SIGGINS, J.**—The City of Oakland (City) appeals from a judgment granting Kheven LaGrone's petition for a writ of administrative mandamus. The trial court directed that LaGrone be reinstated to his position as an engineer with the Port of Oakland, a department of the City, with backpay and benefits. We conclude the judgment is supported by the evidence. We also conclude the court's decision to deny LaGrone's request for attorney fees was within its discretion. Accordingly, we affirm.

## BACKGROUND

### *LaGrone Is Laid Off from His Position with the Port*

LaGrone worked for the Port as a civil engineer from 1981 to 2008. Over the years he was promoted from junior civil engineer to assistant civil engineer and, ultimately, to associate civil engineer. In May 2002, when LaGrone was an assistant civil engineer, the Port renamed its engineering job descriptions by adding "Port" to the job titles. The new job title had no effect on LaGrone's duties.

As a general matter, and as we shall explain in more detail, City jobs fall within specified classes. The City's personnel manual defines "class or class of positions" as "a position or group of positions for which a common descriptive job title may be used, as defined by similar education, experience, knowledge, duties, qualifications and compensation schedule." Similarly, the Personnel Rules and Procedures of the Port of Oakland (Port Rules) define a job class as "a definitely recognized kind of employment in the Port or City service (1) which is designated to embrace all positions sufficiently similar with respect to the duties, requirements as to education, experience, knowledge, ability or other qualifications required of incumbents; (2) for which similar tests of fitness may be used in choosing qualified appointees; and (3) a similar compensation schedule may be made to apply with equity and uniformity." When layoffs occur, more senior employees within a particular job class or classification are entitled to "bump" less senior employees in the same class, so that the more senior employee can remain employed and the less senior employee will be laid off.

In August 2008, LaGrone was notified by Port Executive Director Omar Benjamin that his position was being eliminated as part of the new operating budget and that he had insufficient seniority credits to "bump" any other Port

employee in his job classification. But, Benjamin explained: "since the Port and the City of Oakland are under a comprehensive personnel system, and based upon your seniority credits in the classification of Port Associate Engineer (Civil Work) you do have seniority over other employees in the Civil Engineer classification at the City of Oakland and will bump a less senior City of Oakland employee in this classification." Therefore, Benjamin notified LaGrone he was being reassigned to a civil engineer position with the City's Community & Economic Development Agency (CEDA). The following week the City sent LaGrone a letter confirming his new appointment to CEDA.

Around that time Acting City Administrator Dan Lindheim learned that a number of Port engineers were being laid off and had been notified they had the right to "bump" into City engineering positions. Lindheim felt the fiscal and managerial ramifications of allowing Port employees to bump into City positions would be "devastating" for the City. After he learned that the Port had previously refused to allow some City engineers to bump into Port positions and consulted with the city attorney, Lindheim concluded the City was not required to allow Port engineers to bump into City positions. He informed Benjamin that the City would decline to accept the Port employees. "As you know, the Port Commission has the authority, and has frequently exercised the authority to create Port-specific classifications. Employees in these classes do not have the right to 'bump' into City positions. It appears that the Port Commission has exercised that authority with respect to the engineering, human resource and accountant classes, creating Port-specific classes." On September 11, 2008, LaGrone was notified that the City would not accept laid-off Port employees in his classification. Because there were no available Port positions in his classification, he was laid off effective September 26, 2008.

*The Administrative Proceedings*

LaGrone appealed the City's decision to its civil service board on the ground that the layoff violated the Oakland City Charter and both the City's and Port's personnel rules. He asserted that the Port's associate civil engineer positions were in a common job classification with the City's civil engineer positions, and that he was entitled to bump into a City position within the same classification. The City argued LaGrone had no right to bump into a City position because his classification was a "Port specific," not a citywide, engineering classification.

An administrative hearing was held before the civil service board. LaGrone testified he understood he had the right to bump less senior City employees within his current and former job classifications in the event of a layoff. He asserted that the renaming of his position in 2002 did not change his job classification and was inconsistent with the City's and Port's personnel rules and procedures for classification changes. Moreover, his duties and responsibilities remained the same after his job title changed.

LaGrone testified that in 2001 he applied to transfer to an assistant civil engineer position with the City, and that engineers commonly transferred between the City and the Port at that time. He took the City's promotional examination, was placed on the eligibility list for the City civil engineer position, and renewed his position on the transfer list in 2003. Under the Port Rules, employees can only put their names on transfer lists for positions within the same job classification. "Any permanent classified employee may be transferred or request a special or permanent transfer from one appointing authority to another with the consent of the employee and the approval of the personnel director, and the consent of the appointing authority concerned, provided the positions are in the same or similar class." (Port Rules, § 5.09.)

The City argued LaGrone had no right to bump into a City position because the Port associate engineer classification and the City civil engineer classification are not common classes. Although the Port is a department of the City, it operates autonomously in a number of respects and has its own personnel department, personnel procedures and rules. Under those rules, the Port commissioners have the authority to create new job classifications within the Port. The Port conducts its own recruitment process for all Port jobs independent of the City's recruitment process.

Historically, the City and Port would confer and agree on what they considered to be "city-wide" or "common" job classifications. At the time of the 2008 layoffs both City and Port human resources staff initially believed that Port associate engineer and City civil engineer classifications were common classes. But, after the acting city administrator looked into the matter, the City decided the Board of Port Commissioners had created a new, Port-specific classification for LaGrone's job when it renamed the job in 2002. After that change only Port employees could apply for a promotion to Port associate engineer, and Port associate engineers were protected from being bumped by or having to compete with City-employed engineers for promotions.

Jamie Pritchett is the City's principal human resource analyst and was the City's layoff coordinator in 2008. She testified that the Port Commission approves both the creation of Port job classifications and changes in existing job classifications. When the Port renames a position "Port-specific," it bars City employees from applying for or transferring into it. In the past, the City and Port would compare job descriptions and qualifications to determine which job classifications would be treated as common. Not all Port jobs have common classifications with the City, and not all City positions have common classifications with the Port. During the 2008 layoffs Pritchett initially determined the Port associate engineer and City civil engineer positions were common classifications. Later, Lindheim told her that positions the Port identified as Port-specific could not be common to City classifications. The City did not have a list of the common classifications as between the Port and the City, but it was in the process of creating one. The City's classification plan was not a written document "the way it[ i]s stated in the City's civil service rules," but "is more of a concept as opposed to an actual document."

Lindheim also testified for the City. He had met with the city attorney regarding whether the Port engineer positions targeted for layoffs were "Port-specific," and obtained a written opinion from the city attorney indicating he could treat them as such.[1] He had not read the Port's personnel rules and did not know whether they controlled how classification changes are made.

The City also presented written and oral testimony from Wing Tak Lau, principal civil engineer with CEDA. Lau had once considered applying for a job transfer to the Port, but he was told by the Port's human resources department that the position he sought was restricted to Port employees.

LaGrone introduced a July 31, 2008 letter to his union, Western Council of Engineers (WCE), from Port counsel Jones Day, responding to the union's request for information. Jones Day stated that the Port's job classifications for civil engineers were common with specified City engineer classifications. This letter amended an earlier response sent on July 25, 2008, in which Jones Day said that none of the classifications represented by WCE were common with any City classification.

The City introduced a July 14, 2008 letter from Port human resources director Debora Preston to the City. Preston's letter contained a list of common classifications that did not include the engineering classifications. The letter referred to an attached May 17, 1994 letter from the Port's personnel manager to the City's manager of employment and classification

---

[1] This written opinion is not in the record, and apparently was never produced.

that said the list had been agreed upon by a city council resolution, but the attachment was not included in the City's evidence.

The civil service board denied LaGrone's appeal and made the following findings of fact: "(1) The Port established 'port specific' job classifications which protected Port employees by not allowing City employees to transfer into those classifications. The creation of 'port specific' classifications was a practice generally accepted by both the City and the Port and had continued for several years. [¶] (2) Port employees in the Port Associate Engineer classification were represented by Western Council of Engineers (WCE) and City employees in the Civil Engineer classification were represented by IFPTE, Local 21. The representation by two different unions was significant because it indicated there was a distinction between the two classifications. [¶] (3) The law firm Jones Day issued a letter on behalf of the Port of Oakland opining that there were no shared classifications between employees represented by WCE and City employees. Jones Day then reversed its opinion without any explanation of its research or reasoning. [¶] (4) The determination of which classifications were considered city-wide common classifications for the purpose of establishing seniority in the event of a lay-off was based on mutual agreement between the City and the Port. The City and the Port did not mutually agree that appellant's classification was a city-wide classification." From these findings, the board drew the legal conclusion that "at the time appellant was laid off, the Port Associate Engineer classification was not a city-wide classification, and thus appellant had no bumping rights into a City engineering position."

*The Writ Petition*

LaGrone petitioned for a writ of mandate under Code of Civil Procedure sections 1094.5 and 1094.6.[2] The trial court ruled that the preponderance of evidence established LaGrone was improperly denied his right to bump into a City position under the applicable layoff rules. The court noted that while article IX, section 902, subdivision (c) of the Oakland City Charter exempts specified Port positions from the City's civil service rules, LaGrone's was not an exempt position. The court further found there was no evidence the Port's 2002 renaming of LaGrone's position removed it from its previously ac-knowledged common classification with City engineering positions: "While there is some evidence in the record to suggest that the Port treated certain positions, including the Port Associate Engineer, as limited to Port employ-ees, at least in terms of promotional opportunities, this does not establish that

---

[2] Unless otherwise indicated, further statutory references are to the Code of Civil Procedure.

the position was excluded from the common classification under the applicable provisions of the Charter, particularly for purposes of layoffs. The fact that the position was retitled by Port Ordinance in 2002 did not [a]ffect the exclusion of the position from the general civil service rules, as it was not followed with an action of the Civil Service Board determining that the position was 'peculiar to the operations of the Port.' "

The court concluded LaGrone's position at the time of the layoff was in a common classification and subject to the rules allowing bumping and reversion into a previously held classification, regardless of whether the available position was with the Port or the City. The court ordered a writ to issue requiring the City to reinstate LaGrone and allow him to exercise his bumping rights into an appropriate position, with backpay and benefits. LaGrone moved unsuccessfully for attorney fees pursuant to Code of Civil Procedure section 1021.5 and Labor Code section 218.5. Both parties filed timely appeals, which we have consolidated for purposes of briefing, argument and decision.

## DISCUSSION

### I. *The Writ*

### A. *Standards of Review*

In ruling on an application for a writ of mandate, the trial court uses its independent judgment to determine whether the weight of the evidence supports the administrative decision. (*Lake v. Reed* (1997) 16 Cal.4th 448, 456–457 [65 Cal.Rptr.2d 860, 940 P.2d 311].) However, the court "must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817 [85 Cal.Rptr.2d 696, 977 P.2d 693].)

On appeal from an order granting a writ of administrative mandamus, this court reviews the record to determine whether the trial court's findings are supported by substantial evidence. We resolve all evidentiary conflicts and draw all reasonable inferences in favor of the trial court's decision, and may overturn the trial court's factual findings only if the evidence is insufficient as a matter of law to sustain them. (*Lake v. Reed, supra*, 16 Cal.4th at p. 457.) However, where the determinative issue is legal rather than factual we

exercise our independent judgment. (*Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1233 [130 Cal.Rptr.2d 209].) "If the decision of the lower court is right, the judgment or order will be affirmed regardless of the correctness of the grounds on which the court reached its conclusion." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 346, p. 397.)

## B. *The Trial Court's Factual Findings Are Supported by Substantial Evidence*

### 1. *The City's Civil Service System*

■ The outcome of this case turns on application of the City's civil service procedures. Article IX, section 900 of the City's charter provides for a comprehensive civil service system. (Oakland City Charter (Charter), art. IX, § 900, subd. (a).)[3] The civil service encompasses "all offices and employments in the City government" except for certain positions specifically identified in the Charter as exempt or excepted from the civil service upon the recommendation of the city council, approved by the civil service board (Board). (Charter, art. IX, §§ 902, subd. (f), 900.)

■ The City's Personnel Manual provides the rules and procedures for administering the civil service system. (Oakland Mun. Code, § 2.08.040; see also §§ 2.08.010, 2.08.020.B.) Section 3.02(a) of the Personnel Manual directs that "All positions in the competitive civil service shall be grouped into classes, and each class shall include those positions sufficiently similar in respect to their duties, functions, and responsibilities so that similar positions may be assigned similar titles and embraced within the same class specifications, so that similar requirements as to training, experience, knowledge, skill, and ability, and same rates of pay are applicable. The purpose of such classification is to provide uniform standards, uniform pay scales and an orderly means of regulating the status of incumbents." The City personnel director is responsible for preparing and maintaining the classification plan, subject to Board approval. (City, Personnel Manual, §§ 3.02(b), 3.04(a).) The personnel director may also investigate and recommend changes in the classification of any civil service position where warranted (*id.*, § 3.04(d)), and affected employees and their unions can appeal such decisions to the Board. (*Id.*, § 3.04(e).) Board approval is required for both new classifications and amendments to existing class specifications. (*Id.*, § 3.04(b), (c).)

---

[3] We grant LaGrone's request for judicial notice of the pertinent sections of the Charter. (Evid. Code, §§ 451, 459, subd. (a).)

■ Rule 9 of the City's Personnel Manuel regulates treatment of personnel in the event of a layoff. Layoffs are effectuated on a "[c]itywide basis by prescribed classification," with employees with the least seniority and efficiency points laid off first. (City Personnel Manual, § 9.01; see *id.*, 9.02.) Thus, if an employee in a particular job classification is laid off but has more seniority and efficiency points than another employee in the same job classification working for a different City department, the more senior employee may bump the less senior employee, and the less senior employee will be laid off. (*Id.*, §§ 9.01, 9.02.)

■ While the Port enjoys an amount of autonomy with respect to many of its functions (Charter, art. VII, § 706), Port employees, with exceptions not relevant here, are included within the City's civil service system and subject to its civil service rules. (Charter, art. VII, § 714.) The Port is also authorized to maintain its own personnel rules provided they are consistent with the City's civil service rules. (Oakland Mun. Code, § 2.08.050.)

Section 3 of the Port Rules addresses the administration of job classifications, including reclassifications. Section 3.05, subdivision (b) provides: "The Employee Relations Officer shall have the right to initiate and conduct investigations of any and all positions in the classified service when he or she deems such investigation necessary, and when appropriate, shall request an analysis of the Personnel Director, who shall recommend a change in classification to the Executive Director where the facts are considered to warrant such action. In this connection the Employee Relations Officer and Personnel Director may at any time secure from employees involved new statements of the current duties and responsibilities of positions under consideration. The employees concerned shall have reasonable notice and an opportunity to be heard by the Board before it takes action on a change in classification."

### 2. *Analysis*

The court found that, although the Charter authorizes the Board and the Port to exclude certain positions within the Port from the City's civil service rules, they had not done so with respect to LaGrone's position. LaGrone was, therefore, entitled to the protections afforded by the civil service rules during the 2008 layoff. This much is undisputed.

The question posed here, rather, is whether the Port changed LaGrone's job classification in 2002 so that his position ceased to be a common classification with the City's civil engineer positions. The City maintains that the Port's unilateral renaming of his position as "Port-specific" withdrew the position from the common classification. The court disagreed: "While there is

some evidence in the record to suggest that the Port treated certain positions, including the Port Associate Engineer, as limited to Port employees, at least in terms of promotional opportunities, this does not establish that the position was excluded from the common classification under the applicable provisions of the Charter, particularly for purposes of layoffs." Its finding is supported by the evidence.

As a preliminary matter, we reject the City's assertion the court failed to honor the strong presumption of correctness afforded to agency decisions after administrative hearings. To the contrary, the court correctly cited *Fukuda* for the standard of review and expressly noted its deference to the hearing officer. Nothing in the record gives us reason to doubt those express statements.

On the merits, there is sufficient evidence in the record supporting the trial court's ruling. There was considerable evidence that LaGrone's position was within a common classification with City engineering jobs. The Port associate engineer classification was created in 1953 and retitled twice, in 1982 and 2002. LaGrone testified that the 2002 title change did not remove him from a common classification, and that the City so indicated in a March 4, 2003 letter sent to verify that LaGrone was "still interested in remaining on the transfer list." As LaGrone explained, "you have to be in the same classification to be on the transfer list." LaGrone also testified that transfers between City and Port engineering positions were common at the time he applied—he knew "a lot of engineers went to the City and vice versa."

Until Lindheim determined otherwise, the evidence shows both the Port and the City believed LaGrone was entitled to bump into a City engineering position. This is shown by the Port's letter informing LaGrone of his right to bump into a City position and CEDA's letter confirming his new position and notifying him when and where to report for work. It was also confirmed by the Port's outside counsel and by City human resource analyst Pritchett's testimony. Pritchett testified: "Q: When you, uh, and the Port personnel first discussed the engineering classifications for the layoff in 200—, the Port layoff in 2008, did you, did you initially believe that the Port Associate Engineer and the City Civil Engineer were common classifications? [¶] A: Based solely on the comparison of the job descriptions, yes. [¶] Q: And taking a look at what, um, has been marked as City Exhibits 1 and 2 for a moment, I'd like to ask you if you're aware of, why these letters were sent to Mr. LaGrone? [¶] A. Yes, I am familiar with these letters. [¶] Q: Okay and why were they sent? [¶] A: Based on the initial recommendations between the City and the Port, the classifications [were] initially deemed common. [¶] Q: Did you later change your understanding about whether these were in fact common classifications? [¶] A: Based on direction from the City administrator, yes."

The record also supports the court's finding that the Port's unilateral 2002 renaming of LaGrone's position did not remove it from the common classification. Pritchett testified that the City and Port have historically determined which job classifications will be treated as common for purposes of layoff procedures through a collaborative process, and both must agree before a classification will be deemed common. The City acknowledged in the trial court that "it's a management decision that both the City management and the Port management get to make." Pritchett explained that the process involves comparing job descriptions, minimum qualifications and "other certifications." There was no evidence that the City and Port ever carried out such a comparison, or engaged in any sort of collaboration in connection with the Port's 2002 renaming of LaGrone's classification. By its terms, the May 2002 Port ordinance changed only the names of the Port's engineer positions. It makes no reference to job classifications, duties, responsibilities, qualifications, or pay levels. And while section 3.05 of the Port Rules requires that potentially affected employees be given notice of a proposed classification change before the Board may act on it, LaGrone was never told the 2002 change in his job title affected his classification or that he had the right to dispute it.

Much of the City's argument on appeal is aimed at demonstrating that the evidence in the administrative record supports the Board's four specific findings. We need not address these arguments at length, because the only question posed for this court's consideration is whether there was substantial evidence to support the trial court's conclusion. "Even when, as here, the trial court is required to review an administrative decision under the independent judgment standard of review, the standard of review on appeal of the trial court's determination is *the substantial evidence test*." (*Fukuda v. City of Angels, supra*, 20 Cal.4th at p. 824, italics added.) Moreover, of the Board's four findings, only its determination that "[t]he City and the Port did not mutually agree that appellant's classification was a city-wide classification" conflicts with the trial court's factual determination that, at least until the 2008 layoffs came about, they did. As we have explained, the trial court's determination is amply supported by substantial evidence.

■ The City argues at great length that the court confused the concept of removing Port positions from the civil service system entirely, as authorized under Charter section 902, subdivision (c), with that of making positions "Port-specific" by removing them from a common classification with City positions. It says the court erroneously assumed "that the respondent's 'Port specific' job classification had been improperly excluded from the civil

service system in violation of Charter [s]ection 902, subdivision (c)," and thus based its order exclusively on Charter section 902, subdivision (c), which it maintains was never raised at the administrative hearing or in the trial court. This argument misconstrues the ruling. The court found that LaGrone's classification was *not* excluded from the civil service system. The dispositive issue, as the City seems to agree in its reply brief, was and is whether the Port's 2002 renaming of LaGrone's position removed it from its previously accepted common classification with City engineer positions. The court's finding that it did not is supported by substantial evidence and therefore will be affirmed.

## II.  *Attorney Fees*

After he prevailed on the writ petition, LaGrone moved for an award of attorney fees pursuant to section 1021.5, California's private attorney general statute.[4] He contended his case would "ultimately confer a significant benefit on the public and a large class of persons" by requiring fair and uniform public employment practices and eradicating illegal employment termination practices "engaged in by Defendants over the last 30 years or more." The court ruled that LaGrone "ha[d] not demonstrated that the action herein resulted in the enforcement of an important right affecting the public interest, rather than an action to enforce a right and obtain a remedy personal to him," and therefore denied the motion. We review this ruling for abuse of discretion. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175 [39 Cal.Rptr.3d 788, 129 P.3d 1].)[5]

Section 1021.5 authorizes an award of fees to a successful party "in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

---

[4] He also sought fees under section 218.5 of the Labor Code. The court ruled there was no basis for a fee award under that provision, and LaGrone has not challenged that ruling on appeal.

[5] LaGrone asserts we should apply the de novo standard of review, citing *Connerly*. Not so. *Connerly* observes that, while the normal standard of review for an attorneys' fees award is abuse of discretion, " 'de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.' " (*Connerly v. State Personnel Bd., supra,* 37 Cal.4th at p. 1175.) This is not such a case.

■ LaGrone disputes the trial court's finding that he failed to show this litigation conferred a benefit upon a large class of people, but that finding was within the court's discretion. "The private attorney general theory recognizes citizens frequently have common interests of significant societal importance, but which do not involve any individual's financial interests to the extent necessary to encourage private litigation to enforce the right. [Citation.] To encourage such suits, attorneys fees are awarded when a significant public benefit is conferred through litigation pursued by one whose personal stake is insufficient to otherwise encourage the action. [Citation.] Section 1021.5 was not designed as a method for rewarding litigants motivated by their own pecuniary interests who only coincidentally protect the public interest." (*Beach Colony II v. California Coastal Com.* (1985) 166 Cal.App.3d 106, 114 [212 Cal.Rptr. 485].) "Instead, its purpose is to provide some incentive for the plaintiff who acts as a true private attorney general, prosecuting a lawsuit that enforces an important public right and confers a significant benefit, despite the fact that his or her own financial stake in the outcome would not by itself constitute an adequate incentive to litigate." (*Satrap v. Pacific Gas & Electric Co.* (1996) 42 Cal.App.4th 72, 80 [49 Cal.Rptr.2d 348]; see also *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 167 [188 Cal.Rptr. 104, 655 P.2d 306]; *Caloca v. County of San Diego* (2002) 102 Cal.App.4th 433, 447 [126 Cal.Rptr.2d 3].)

Here, LaGrone's action was not initiated in the interest of the general public, but instead as an administrative action to reinstate his employment. The possibility that his lawsuit may have conveyed a cautionary message to the City and Port about their conduct, or that it might cause them to change their practices in the future, is insufficient to satisfy the significant public benefit requirement. (*Pacific Legal Foundation v. California Coastal Com., supra,* 33 Cal.3d at p. 167; *Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 635–636 [71 Cal.Rptr.2d 632].) The trial court appropriately determined LaGrone did not demonstrate an adequate public, rather than personal, benefit to support an award under section 1021.5.[6]

---

[6] We previously deferred ruling on requests by both parties for this court to take additional evidence pursuant to section 909. We grant such requests only under exceptional circumstances that justify deviating from the general rule that appellate review is limited to the record before the lower court. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [58 Cal.Rptr.2d 899, 926 P.2d 1085].) No such exceptional circumstances are present here. Accordingly, the requests are denied.

The City alternatively asks us to take judicial notice of postjudgment revisions to its Personnel Manual apparently made in 2011, which it argues prove the Port associate engineer classification is not a common class with the City civil engineer classification. In effect, the City seeks to have these alleged changes considered as postjudgment evidence. The request, whether styled as one for new evidence or judicial notice, is also denied. (See *Philippine Export & Foreign Loan Guarantee Corp. v. Chuidian* (1990) 218 Cal.App.3d 1058, 1090 [267 Cal.Rptr. 457]; 9 Witkin, Cal. Procedure, *supra,* Appeal, § 337, p. 387.)

## DISPOSITION

The judgment is affirmed. LaGrone is awarded costs on appeal.

McGuiness, P. J., and Pollak, J., concurred.

On January 11, 2012, the opinion was modified to read as printed above.