Filed 10/25/13; pub. order 11/15/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DONALD A. NORBERG as Trustee, etc., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CALIFORNIA COASTAL COMMISSION et al., <br><br> Defendants and Appellants. | G047522 <br><br> (Super. Ct. No. 30-2010-00351770) <br><br> O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Luis A. Rodriguez, Judge.  Reversed.

Kamala D. Harris, Attorney General, John A. Saurenman, Assistant Attorney General, Jamee Jordan Patterson and Hayley Peterson, Deputy Attorneys General for Defendants and Appellants.

Gaines & Stacey, Sherman L. Stacey and Nanci S. Stacey for Plaintiff and Respondent.

\*          \*          \*

The facts underlying this appeal are set forth more fully in the opinion rendered in companion Case No. G047584. As we recall, the trial court issued a peremptory writ of mandate directing the California Coastal Commission (Commission) to set aside certain conditions it had imposed with respect to the residential permit application of Donald A. Norberg as Trustee of the Norberg Family Trust (Norberg). Norberg thereafter filed a motion for private attorney general fees and the court awarded him $35,870. The Commission appeals.

We reverse. The issuance of the peremptory writ of mandate did not confer a substantial benefit on either the general public or a large number of persons. Moreover, the financial burden of the litigation was not out of proportion to Norberg's individual stake in the matter.

I

FACTS

In granting Norberg's petition for a writ of mandate, the court stated that the Commission's findings with respect to the location of the bluff edge were not supported by substantial evidence and that the Commission's imposition of condition No. 2 restricting the future use of shoreline protective devices exceeded its jurisdiction, inasmuch as the verbiage of condition No. 2 omitted certain qualifying language of Public Resources Code section 30253. Norberg based his Code of Civil Procedure section motion for attorney fees[1] on the determination that the Commission had exceeded its jurisdiction in imposing condition No. 2 as originally worded.

In his motion, Norberg argued that because of the trial court ruling in his matter, interpreting the scope of Public Resources Code section 30253, the Commission

---

[1] In his motion, Norberg sought $35,870 in attorney fees under Code of Civil Procedure section 1021.5, or in the alternative, $7,500 in attorney fees under Government Code section 800. The availability of attorney fees under Government Code section 800 is not at issue on appeal.

could no longer impose a broadly worded shoreline protective device restriction, that failed to fully track the language of the statute, on any other person who might seek a permit in the future. Consequently, he argued, inter alia, that he had conferred a significant benefit on the general public and a large class of persons, giving rise to an entitlement to private attorney general fees under Code of Civil Procedure section 1021.5.

The court held that Norberg was entitled to attorney fees under Code of Civil Procedure section 1021.5. It found that Norberg, as a successful party, had vindicated important rights and conferred a significant benefit on the general public and a large class of persons. It stated that the Commission had purposely disregarded the Coastal Act by forcing Norberg and other permit applicants to either waive their rights to construct shoreline protective devices or have their permit applications denied. The court further stated that the necessity of private enforcement and the financial burden thereof made the award appropriate. In conclusion, the court stated that Norberg received no direct pecuniary benefit inasmuch as he received no monetary award and did not intend to sell his home in the foreseeable future.

II

DISCUSSION

A. *Standard of Review:*

"On appeal from an award of attorney fees under section 1021.5, '"the normal standard of review is abuse of discretion. . . ."' [Citations.]" (*Serrano v. Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1025-1026.) That is the standard we apply here. (See *City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 82-83.)

B. *Code of Civil Procedure Section 1021.5:*

Code of Civil Procedure section 1021.5 provides in pertinent part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right

3

affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

So, in applying "the statutory criteria, we must consider whether : (1) plaintiffs' action 'has resulted in the enforcement of an important right affecting the public interest,' (2) 'a significant benefit, whether pecuniary or nonpecuniary has been conferred on the general public or a large class of persons' and (3) 'the necessity and financial burden of private enforcement are such as to make the award appropriate.' [Where] plaintiffs' action has produced no monetary recovery, factor '(c)' of section 1021.5 is not applicable." (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 934-935; accord, *Serrano v. Stefan Merli Plastering Co., Inc.*, *supra*, 52 Cal.4th at p. 1026.)

*C. Enforcement of Important Right Affecting Public Interest:*

"Section 1021.5, . . . permits an award '"in any action which has resulted in the enforcement of *an important right affecting the public interest*" regardless of its source—constitutional, statutory or other.' [Citation.]" (*Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 683.) "The enforcement of an important right affecting the public interest implies that those on whom attorney fees are imposed have acted, or failed to act, in such a way as to violate or compromise that right, thereby requiring its enforcement through litigation." (*Adoption of Joshua S.* (2008) 42 Cal.4th 945, 956; accord, *Serrano v. Stefan Merli Plastering Co., Inc.*, *supra*, 52 Cal.4th at p. 1026.)

In enacting Code of Civil Procedure section 1021.5, "the Legislature was focused on public interest litigation in the conventional sense: litigation designed to

4

promote the public interest by enforcing laws that a governmental or private entity was violating, rather than private litigation that happened to establish an important precedent." (*Adoption of Joshua S.*, *supra*, 42 Cal.4th at p. 956.)

Here, in bringing his writ petition, Norberg sought to invalidate permit conditions affecting planned residential improvements on his privately owned oceanfront property. His primary attacks were on the determination of the location of the bluff edge, which affected the building setback on his property and thus the scope of his improvements, and on condition No. 2, regarding the future use of shoreline protective devices. Where his request for attorney fees is concerned, however, he focuses only on the wording of condition No. 2, which is based upon Public Resources Code section 30253.

We agree that the proper application of statutory language, such as that contained in Public Resources Code section 30253, is an important right. Furthermore, it has been said that "the public always has a significant interest in seeing that legal strictures are properly enforced . . . ." (*Woodland Hills Residents Assn., Inc. v. City Council*, *supra*, 23 Cal.3d at p. 939.) This does not mean, however, that the private attorney general doctrine was designed to reward plaintiffs who, in pursuit of their own interests, just happened to bring about the enforcement of a statute that benefits the public. (*Beach Colony II v. California Coastal Com.* (1985) 166 Cal.App.3d 106, 114.)

D. *Significant Benefit Conferred on Large Class of Persons:*

In one sense, "the public always derives a 'benefit' when illegal private or public conduct is rectified." (*Woodland Hills Residents Assn., Inc. v. City Council*, *supra*, 23 Cal.3d at p. 939.) This case, for example, pertains to a Commission permit condition that failed to fully track the language of Public Resources Code section 30253. However, "the Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation." (*Woodland Hills Residents Assn., Inc. v. City*

5

*Council*, *supra*, 23 Cal.3d at p. 939.) "'Instead, its purpose is to provide some incentive for the plaintiff who acts as a true private attorney general, prosecuting a lawsuit that enforces an important public right and confers a significant benefit, despite the fact that his or her own financial stake in the outcome would not by itself constitute an adequate incentive to litigate.' [Citations.]" (*LaGrone v. City of Oakland* (2011) 202 Cal.App.4th 932, 946.)

The Commission argues, and persuasively so, that the only thing Norberg achieved was the invalidation of a permit condition affecting one parcel of privately owned real property. It points out that the issuance of the peremptory writ of mandate benefitted only Norberg—no one else. The Commission emphasizes that the trial court's decision has no precedential value and, consequently, does not confer a substantial benefit, or any benefit, on a large class of persons. (*Beach Colony II v. California Coastal Com.*, *supra*, 166 Cal.App.3d at p. 111 [decision is limited to parties and does not benefit large class of persons].)

In support of its position, the Commission cites *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158. In that case, the co-owners of a parcel of beachfront property made certain seawall improvements without first obtaining a permit. When they applied for a permit after the fact, the Commission imposed a condition concerning the dedication of an easement for public access. The property owners sought and obtained a writ of administrative mandamus. The court determined the Commission's finding that the improvements adversely impacted public access to the beach was unsupported by substantial evidence. (*Id.* at p. 164.)

The Supreme Court in *Pacific Legal Foundation v. California Coastal Com.*, *supra*, 33 Cal.3d 158 held that the property owners were not entitled to an award of attorney fees under Code of Civil Procedure section 1021.5. It stated: "The record demonstrates that the primary effect of the judgment was to invalidate the particular permit condition imposed in light of the limited facts . . . . The court granted a writ of

6

administrative mandamus because the findings of the Commission forming the basis for the exaction in question were not supported by substantial evidence. . . . The court also concluded, on the basis of the absence of evidence to support the Commission's factual determinations, that the permit condition effected an unconstitutional taking of an interest in plaintiffs' property." (*Pacific Legal Foundation v. California Coastal Com.*, *supra*, 33 Cal.3d at p. 167.)

The court continued: "Although we have no doubt that the right to be free from the deprivation of private property interests in an arbitrary manner may rise to the level of an 'important right affecting the public interest,' it is equally plain that the grant of administrative mandamus under the limited factual circumstances shown here did not result in conferring a 'significant benefit' on a 'large class of persons.' The decision vindicated only the rights of the owners of a single parcel of property." (*Pacific Legal Foundation v. California Coastal Com.*, *supra*, 33 Cal.3d at p. 167.)

So too, here, the invalidation of the bluff edge determination, because of a lack of substantial evidence, and the invalidation of the restriction on the future use of shoreline protective devices, because of a failure to fully track the language of the statute, affects only the rights of Norberg, no one else. It simply cannot be said that the peremptory writ of mandate conferred a benefit on a large class of persons. (*Beach Colony II v. California Coastal Com.*, *supra*, 166 Cal.App.3d at p. 111.)

However, Norberg emphasizes that *Pacific Legal Foundation v. California Coastal Com.*, *supra*, 33 Cal.3d 158 addressed only a situation where the Commission had made a finding unsupported by substantial evidence; it did not also address the application of a statute, such as Public Resources Code section 30253. True enough, but the court in *Pacific Legal Foundation* observed that the permit condition in question effected an unconstitutional taking of property. (*Pacific Legal Foundation v. California Coastal Com.*, *supra*, 33 Cal.3d at p. 167.) So, while its decision did not address a statutory issue, it did address one of constitutional proportions. Moreover, the point of

7

the matter is that the court in *Pacific Legal Foundation* stated the granting of the petition for writ relief did not confer a significant benefit on a large class of persons inasmuch as it "vindicated only the rights of the owners of a single parcel of property." (*Ibid*; see also *Christward Ministry v. County of San Diego* (1993) 13 Cal.App.4th 31, 49.)

Similarly, in the matter before us, the peremptory writ of mandate did not confer a benefit on anyone other than Norberg. Yet Norberg maintains that the application of the court's decision on permit condition No. 2 cannot be limited to himself alone. We must disagree. Just as in *LaGrone v. City of Oakland*, *supra*, 202 Cal.App.4th 932, the "action was not initiated in the interest of the general public, but instead as an administrative action [for personal purposes]. The possibility that his lawsuit may have conveyed a cautionary message to the [public entity] about [its] conduct, or that it might cause [the public entity] to change [its] practices in the future, is insufficient to satisfy the significant public benefit requirement. [Citations.]" (*Id.* at p. 946.)

Inasmuch as we hold that the first of the three factors set forth in Code of Civil Procedure section 1021.5 has not been satisfied, we could end our discussion here. However, inasmuch as Norberg puts great emphasis on the second factor, we will address it as well.

*E. Financial Burden:*

*(1) Purpose of fees—*

"[A] litigant who has a financial interest in the litigation may be disqualified from obtaining [private attorney general] fees when expected or realized financial gains offset litigation costs." (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1211.) At the same time, "the purpose of [Code of Civil Procedure] section 1021.5 is not to compensate with attorney fees only those litigants who have altruistic or lofty motives, but rather all litigants and attorneys who step forward to *engage in public interest litigation* when there are insufficient financial incentives to justify the litigation

8

in economic terms." (*Conservatorship of Whitley*, *supra*, 50 Cal.4th at p. 1211, italics added.)

"In determining the financial burden on litigants, courts have quite logically focused not only on the costs of the litigation but also any offsetting financial benefits that the litigation yields or reasonably could have been expected to yield. '"An award on the 'private attorney general' theory is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter.' [Citation.]"' [Citation.] 'This requirement focuses on the financial burdens and incentives involved in bringing the lawsuit.' [Citation.]" (*Conservatorship of Whitley*, *supra*, 50 Cal.4th at p. 1215.)

*(2) Character of personal interest—*

Norberg challenges the Commission's assertion that he is not entitled to attorney fees because he was simply vindicating his own private interests. He says *Conservatorship of Whitley, supra,* 50 Cal.4th 1206 makes clear that the focus is on the plaintiff's financial incentives and burdens, not on his abstract personal stake. He is correct on this point. (*Id.* at p. 1221.)

However, we disagree with Norberg's assertion that he had no financial incentive in filing his writ petition. Norberg sought to enhance his oceanfront property with what he estimated to be $250,000 in improvements. These improvements were comprised of the addition to the dwelling of a new 860-square-foot semi-subterranean lower level, including two bedrooms, two bathrooms, a family room and a storage/utility room, the remodeling of the upper/existing level of the dwelling, and the construction of a ground level paved patio, an outdoor spa and an outdoor shower. In filing his writ petition, he sought to invalidate the bluff edge determination, so as to expand the developable area of his backyard, and to invalidate the restriction on the future use of shoreline protection devices, so as to enhance the desirability of proceeding with his

9

construction without concern about whether the restriction would ever come into play.

In other words, Norberg's goal was to enhance his private property with $250,000 in improvements. We call this a financial incentive. We can't slice it any other way.

Yet Norberg insists, as the court observed, that he derived no pecuniary benefit from the issuance of the writ, inasmuch as he had no intention of selling his property any time soon. But the fact that he was not planning on liquidating his asset any time soon does not mean that he did not have a financial incentive—the ownership of a property with $250,000 in additional improvements—in pursuing writ relief.

*(3) Speculative value—*

Norberg, relying on *Conservatorship of Whitley*, *supra*, 50 Cal.4th 1206, maintains that the type of benefit he received does not preclude an attorney fees award. The *Whitley* court observed: "In determining the financial burden on litigants, the courts have quite logically focused not only on the costs of the litigation but also any offsetting financial benefits that the litigation yields or reasonably could have been expected to yield. '"An award on the 'private attorney general' theory is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter.' [Citation.]"' [Citation.]" (*Id.* at p. 1215.)

In applying this balancing test, the court follows a multi-step approach. The first step is for the trial court to estimate the monetary value of the benefits obtained. The second step is to apply a discount based upon the probability of success at the time the "vital litigation decisions were being made." (*Conservatorship of Whitley*, *supra*, 50 Cal.4th at p. 1215.) The final step is to compare the estimated value of the case at the time the vital litigation decisions were being made, to the costs of the litigation, and then determine "whether it is desirable to offer the bounty of a court-awarded fee in order to encourage litigation of the sort involved in this case. . . . [A] bounty will be appropriate

10

except where the expected value of the litigant's own monetary award exceeds by a substantial margin the actual litigation costs.' [Citation.]" (*Id.* at pp. 1215-1216.)

Here, Norberg says the Commission provided no evidence of the amount by which the value of his property was enhanced due to the invalidation of the permit conditions. He forgets, however, that it is the party seeking private attorney general fees who "bears the burden of establishing that its litigation costs transcend its personal interest. [Citation.]" (*Beach Colony II v. California Coastal Com.*, *supra*, 166 Cal.App.3d at p. 113.)

Norberg also says that any increase in value was speculative and that speculative financial rewards may not be considered in the analysis, citing *Baggett v. Gates* (1982) 32 Cal.3d 128 and *Galante Vineyards v. Monterey Peninsula Water Management Dist.* (1997) 60 Cal.App.4th 1109. However, neither of these cases supports this broad-based assertion.

In *Baggett v. Gates*, *supra*, 32 Cal.3d 128, certain police officers were demoted by their employer, a chartered city, without being afforded an administrative appeal under the Public Safety Officers Procedural Bill of Rights Act (Gov. Code § 3300 et seq.) (Bill of Rights Act). (*Baggett v. Gates*, *supra*, 32 Cal.3d at pp. 131-133.) In defending against the officers' writ petition, the employer argued that the Bill of Rights Act was inapplicable to chartered cities. (*Id.* at p. 134.) The Supreme Court held that the Bill of Rights Act did apply to chartered cities and that the officers were entitled to recover private attorney general fees. (*Id.* at pp. 139, 143.)

The court stated: "Plaintiffs' action resulted in securing for themselves and many others the basic rights and protections of the Bill of Rights Act. This court has today concluded that these rights and protections are matters of statewide concern. It follows that the rights vindicated by plaintiffs are sufficiently 'important' to justify an attorney fee award. [Citation.]" (*Baggett v. Gates*, *supra*, 32 Cal.3d at p. 143.) The

11

court continued: "Moreover, it can scarcely be contended that plaintiffs' litigation has not conferred a 'significant benefit' on the 'general public.'" (*Ibid.*)

With respect to the financial incentive/burden issue, the *Baggett* court said: "Finally, although this is a closer question, the record before this court indicates that the financial burden this suit placed on plaintiffs was out of proportion to their personal stake in the case. By their action, plaintiffs have secured the enforcement of basic procedural rights . . . . However, enforcement of these procedural rights may well not result in any pecuniary benefit to plaintiffs themselves. [Citation.] For example, plaintiffs' newly won right to an administrative appeal of the Department's decision to reassign them to lower paying positions will not necessarily result in the reversal of that decision. Plaintiffs' reassignment and consequent reduction in salary may be approved." (*Baggett v. Gates*, *supra*, 32 Cal.3d at p. 143.)

The court in *Baggett v. Gates*, *supra*, 32 Cal.3d 128 did not, as Norberg claims, hold that unquantifiable financial incentives may not be considered. In any event, in the matter before us, not only has Norberg failed to obtain a decision with statewide impact, his personal benefits have been fully secured. He may proceed with the improvements to his dwelling unfettered by concerns about the erroneous wording of condition No. 2.

In *Galante Vineyards v. Monterey Peninsula Water Management Dist.*, *supra*, 60 Cal.App.4th 1109, the owners of several vineyards filed a petition for a writ of mandate attacking the certification of an environmental impact report (EIR) and the approval of a dam and reservoir project. (*Id.* at pp. 1113, 1116.) The court issued a peremptory writ of mandate ordering the water management district to set aside both the certification of the final EIR and the approval of the project and to prepare a supplemental EIR pertaining to viticultural issues. (*Id.* at p. 1116.) In addition, the court awarded the petitioners private attorney general fees under Code of Civil Procedure section 1021.5. (*Id.* at pp. 1125-1126.)

12

On appeal, the water management district argued it was error to award attorney fees because of the significant financial interest of the vineyards in the outcome of the litigation. (*Galante Vineyards v. Monterey Peninsula Water Management Dist.*, *supra*, 60 Cal.App.4th at p. 1126.) The appellate court rejected the argument, stating: "In the present action, petitioners . . . are probably the greatest beneficiaries of the writ ordering a focused supplemental EIR on viticultural issues. However, there is no direct pecuniary benefit to petitioners in the judgment. In addition, any future money advantage for petitioners is speculative. Both these factors tend to favor a grant of attorney's fees. [Citation.]" (*Id.* at pp. 1127-1128.) Although the court remarked that "the question of whether the cost of petitioners' legal victory transcends their personal interests was a close one," it found no abuse of discretion in the award of attorney fees, which was less than the amount sought precisely because of the financial interest of the petitioners. (*Id.* at p. 1128.)

In the matter before us, however, the issuance of the writ was of direct benefit to Norberg in that it allowed him to pursue his desired $250,000 in property enhancements, unfettered by his concerns over the original restriction regarding the future use of shoreline protective devices, and it overturned the original bluff edge determination, giving Norberg another opportunity to score a victory on the developable area of his property. Although his financial incentives were difficult to quantify, one can pit the enhanced desirability of proceeding with such extensive property improvements, even as discounted for the likelihood of prevailing on the litigation, against only $35,870 in litigation costs. It is difficult to imagine that the discounted financial incentive does not exceed the litigation cost by a significant margin.

As an aside, we note that while Norberg bases his claim to attorney fees on litigation over condition No. 2, his $35,870 legal bill appears to cover all issues addressed in the litigation, not just the propriety of condition No. 2. That is to say, Norberg has given no indication that there was any effort to separate out and subtract from the total

legal bill the cost of the services pertaining to the review and analysis of engineering and evidentiary issues relevant to the bluff edge determination, issues one might surmise were quite time consuming.  Were the legal bill reduced by the amount of fees incurred with respect to issues other than condition No. 2, the cost of litigating the statutory issue upon which Norberg bases his claim likely would have been even less in comparison to the benefits received.  (See *Conservatorship of Whitley*, *supra*, 50 Cal.4th at p. 1226 [re consideration of portion of fees incurred in furthering the issue of public importance].)

Although we could send the matter back to the trial court to make findings on the attorney fees breakdown, the value of financial incentives to Norberg, and an appropriate discount reflecting the likelihood of litigation success determined at the outset, and to engage in the multi-step weighing process described in *Conservatorship of Whitley*, *supra*, 50 Cal.4th at pages 1215-1216, we see no reason to do so in light of our holding that the first factor set forth in Code of Civil Procedure section 1021.5 has not been satisfied.

III

DISPOSITION

The order is reversed.  The Commission shall recover its costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


FYBEL, J.


THOMPSON, J.

14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DONALD A. NORBERG as Trustee, etc., | |
| Plaintiff and Respondent, | G047522 |
| v. | (Super. Ct. No. 30-2010-00351770) |
| CALIFORNIA COASTAL COMMISSION et al., | ORDER GRANTING REQUEST FOR PUBLICATION; NO CHANGE IN JUDGMENT |
| Defendants and Appellants. | |

Appellant California Coastal Commission has requested that our opinion, filed on October 25, 2013, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.

MOORE, ACTING P. J.

WE CONCUR:

FYBEL, J.

THOMPSON, J.

15