Filed 10/23/14  Rivera v. County of Riverside CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| SHIRLEY RIVERA, | |
| Plaintiff and Respondent, | E055956 |
| v. | (Super.Ct.No. RIC494960) |
| COUNTY OF RIVERSIDE, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John Vineyard, Judge.
Reversed.

The Zappia Law Firm, Edward P. Zappia, Anna Zappia, and Brett M. Ehman for
Defendant and Appellant.

Law Office of Andrew I. Roth and Andrew I. Roth for Plaintiff and Respondent.

### I.  INTRODUCTION

Plaintiff Shirley Rivera worked for defendant County of Riverside (County).

After the County terminated her employment, she filed a petition for writ of mandate

1

under Code of Civil Procedure section 1085 alleging that her right to due process had been violated because she had not been given notice of the termination and her right to appeal the decision. The trial court agreed and issued a writ compelling the County to provide her with an administrative hearing regarding the termination. We affirmed that decision in *Rivera v. County of Riverside* (Aug. 3, 2011, E049282) [nonpub. opn.] (*Rivera I*).[1]

Following remand, Rivera moved to recover her attorney fees under Code of Civil Procedure section 1021.5 (CCP 1021.5) and title 42 United States Code section 1988.[2] The trial court granted the motion on both grounds.

We reverse. Rivera is not entitled to recover attorney fees under CCP 1021.5 because there is nothing in the record to support the conclusion that her action conferred a significant benefit on the general public or a large group of people. Nor is she entitled to recover fees under section 1988. Section 1988 provides for the recovery of attorney fees by a prevailing party for actions to enforce rights under section 1983, among other federal civil rights statutes. A municipality, such as the County, can be liable under section 1983 only when the constitutional tort results from a policy or custom of the municipality. Because there is no evidence in the record that Rivera's injury was the result of any such policy or custom, the County could not be liable to Rivera for the

---

[1] After giving notice to the parties of our intent to do so, we have taken judicial notice of the record on appeal in *Rivera I*. (Evid. Code, §§ 452, subd. (d), 459.)

[2] All further statutory references are to title 42 United States Code unless otherwise indicated.

deprivation of her right to due process. Therefore, she is not entitled to recover attorney fees under section 1988.

## II. FACTUAL AND PROCEDURAL SUMMARY

A. *Background*[3]

In August 2005, Rivera was employed by the County as a senior animal control officer. She was a member of the Laborers' International Union of North America, which has a memorandum of understanding (MOU) with the County. The MOU provides for certain procedures concerning disciplinary action toward union member employees. Prior to taking a disciplinary action, the County must serve two notices on the employee: First, a notice of intent to take disciplinary action (e.g., a notice of proposed termination), which provides the employee with an opportunity to respond to that notice; and second, a notice that the action shall be taken (e.g., notice of termination). The employee can appeal the decision within 10 working days after service of the final notice of disciplinary action. If an employee fails to timely appeal, the right to review is waived.

The MOU provides that notices of disciplinary action "shall be in writing and shall be deemed served when personally delivered to the person to whom it is directed or when deposited in the United States mail, registered or certified postage prepaid and addressed to the designated recipient at the last known address." Under the MOU, an appeal of the County's decision to discharge an employee is heard and decided by an arbitrator. The

---

[3] The background facts are an abridgement of the statement of facts in *Rivera I*.

arbitrator has the power to rescind the discharge and order reinstatement of the employee with back pay and benefits.

In August 2005, the County sent Rivera a notice of proposed termination. The decision was based in part on allegations that Rivera had been drinking alcohol while on duty and was intoxicated when she was driving other employees in a County van during their return from an out-of-town conference. The notice was sent to Rivera at an address on Tamara Drive in Moreno Valley. On August 22, 2005, the County served the second notice—a notice of termination.

Following an arbitration hearing, the arbitrator ordered that Rivera "be reinstated and that she be made whole." The County did not seek judicial review or otherwise challenge the arbitrator's award. Nor did it reinstate Rivera to her position.

Two months after the arbitrator's decision, the County mailed a new notice of proposed termination. This notice was based upon allegations that Rivera had committed perjury during the arbitration. The notice concluded by stating that Rivera had the right to respond to the letter by August 2, 2007.

The notice of proposed termination was sent to Rivera at the Tamara Drive address. According to Prescott, this is the address they had for Rivera "on file" with the County. The notice was sent by certified mail, return receipt requested.

Rivera never received the notice. A return receipt for the notice was signed by someone, but not by Rivera. Although a copy of the notice was not sent to Rivera's attorney, Diane Roth, Roth did obtain a copy of the notice.

4

On August 2, 2007, Roth responded to the notice. Roth began by stating, "[t]his office represents Shirley Rivera." Roth goes on to state that Rivera denies the facts asserted in the notice, and concluded: "Please be on notice that if the County now attempts to terminate [Rivera], we will file an action in court for violation of Ms. Rivera's constitutional rights, demanding reinstatement, back pay, damages and attorneys' fees and costs. [¶] Please be further advised that Ms. Rivera does not waive her right to a full arbitration hearing should you decide to uphold the department's recommendation of termination."

For approximately four months between August and December 2007, Tom Prescott, a human resources division manager for the County, and Roth exchanged numerous letters and e-mail correspondence concerning the possibility of settling the disputes between the parties. During this time, the County did not communicate directly with Rivera; all communication was with Roth. When settlement discussions failed to resolve the disputes, Prescott informed Roth by e-mail on December 12, 2007, that the "County will proceed with its administrative action so Ms[.] Rivera should not be expecting to be reinstated." There does not appear to be any further communication between Roth and the County until February 4, 2008.

In the meantime, on December 22, 2007, the County sent the second notice required by the MOU, a letter titled "Notice of Termination," to the Tamara Drive address by certified mail, return receipt requested. Although the notice indicates that at least seven individuals (all apparently County personnel) received "cc" copies of the

letter, it does not indicate that a copy was sent to Roth. Rivera and Roth each declared they did not receive the notice or a copy of it. There is no evidence in the record that a return receipt for the December 2007 notice was signed by anyone or returned to the County.

In February 2008, Prescott informed Roth by e-mail that Rivera "was sent her final notice of termination more than a month ago (after she rejected our settlement proposal) and the time to appeal the termination has long since passed so there will be no reinstatement to the payroll."

In April 2008, the County paid Rivera $18,427.94 in back pay for the period from August 22, 2005, through December 21, 2007.

B. *Rivera's Petition for Writ of Mandate*

Rivera filed a petition for peremptory writ of mandate and prohibition under Code of Civil Procedure section 1085 in March 2008. An amended petition was filed in May 2009. Rivera did not explicitly assert a cause of action arising under section 1983 of title 42 of the United States Code. She did, however, allege that the County "violated [her] constitutional rights under the Fifth and Fourteenth Amendments to the Constitution of the United States, thereby entitling her to recover attorneys' fees in accordance with [title 42 United States Code sections] 1983 and 1988 *et seq.*"

Rivera sought a peremptory writ of mandate compelling the County to either (1) reinstate her to her position retroactive to August 23, 2005, with back pay and benefits, or (2) "afford [Rivera] due process, including an administrative hearing on her second

6

termination, with all deliberate speed . . . ." She further requested: "As a remedy for County's violation of [Rivera's] right to due process in her second termination, [Rivera] be awarded back pay from her last day of pay until findings and award are issued in her administrative hearing on the second termination[.]" Finally, she requested she be awarded her costs of suit and "attorneys' fees pursuant to *California Government Code* § 800 and 42 U.S.C. § 1983 and 1988 et seq."

Following a hearing, the court made the following findings:

"1. The County failed to comply with the arbitrator's order, dated May 18, 2007, in [Rivera]'s first termination, in that it failed and continues to fail to reinstate [Rivera].

"2. The County did not contest or appeal the arbitrator's May 18, 2007, award.

"3. When the County gave [Rivera] notice of a second termination, it did so in a way that did not give her actual notice.

"4. The County knew that [Rivera] had counsel; it was at all relevant times communicating with [Rivera] solely through her counsel; and, [Rivera]'s counsel had given the County written notice on behalf of [Rivera] that if it made the decision to terminate [Rivera], she intended to request an administrative hearing.

"5. Despite these facts, the County did not give [Rivera] notice of her second termination.

"6. When the County did receive [Rivera]'s request for a hearing it did not proceed to hearing, but claimed that [Rivera]'s first request for a hearing was too early and her second request was too late.

7

"7. The County has paid [Rivera] salary and benefits through December 21, 2007; the County has not paid [Rivera] any salary or benefits since December 21, 2007.

"8. The County under color of law deprived [Rivera] of her right to an administrative hearing to contest her termination in violation of her right to due process under the Fifth and Fourteenth Amendments to the Constitution."

The court then issued a peremptory writ of mandate commanding the County to provide Rivera "with an administrative hearing regarding her termination of December 21, 2007, and to pay [Rivera] full back pay and benefits, including contributions to the Public Employees Retirement System, retroactive to December 21, 2007, plus interest in accordance with law, and to continue such payments of wages and benefits until a decision is issued in the administrative hearing regarding her second termination."

The court also ordered the County to pay Rivera's "attorneys fees pursuant to [section] 1988, et seq., in an amount to be determined by [motion.]"

The County appealed and Rivera cross-appealed.

C. *Rivera I*

In *Rivera I*, we affirmed the trial court's judgment. We began our analysis by noting that the parties do not dispute that "Rivera's employment with the County was a constitutionally protected property interest that could not be terminated without due process," and "that due process in this case requires, at a minimum, that Rivera be provided with notice of her termination and an opportunity to be heard regarding the grounds for termination." (*Rivera I*, *supra,* E049282 [at p.18], citing *Mullane v. Central*

8

*Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 313 (*Mullane*).)  Such notice, we explained, "must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' [Citation.]"  (*Rivera I, supra,* [at p. 18], quoting *Mullane, supra,* at p. 314.)  This calculation must also be made with "'due regard for the practicalities and peculiarities of the case . . . .' [Citations.]"  (*Rivera I, supra,* [at p. 21], quoting *Mullane, supra,* at pp. 314-315.)

In applying these principles, we stated:  "Here, the circumstances, practicalities, and peculiarities in this case include the following:  Rivera was terminated by the County in August 2005.  Although an arbitrator directed the County to reinstate her in May 2007, the County never did so.  In July 2007, the County received the return receipt for its notice of proposed termination signed by [someone other than Rivera], which reasonably suggests that Rivera might not live at the Tamara Drive address.  Five months later, in December 2007, the County mailed the notice of termination that is the subject of this case to the same address.  Significantly, throughout the relevant time period, the County was aware that Roth represented Rivera.  Indeed, the County communicated with Rivera exclusively through Roth, including discussions regarding settlement of the parties' disputes.  Finally, although the County sent the notice of termination by certified mail, return receipt requested, it has produced no return receipt or other evidence that anyone ever received the notice.

"The question is whether, under these circumstances, 'one desirous of actually informing' Rivera of her termination would merely send the notice of the termination by mail to the address on file without informing Roth of the termination or, at a minimum, contacting Roth to confirm Rivera's address. (See *Mullane, supra,* 339 U.S. at p. 315.) The answer, we conclude, is: No. Rivera had not worked for the County for more than two years, she was represented by counsel, the County communicated with Rivera exclusively through her attorney, and, because it did not receive a return receipt signed by Rivera for letters sent to the Tamara Drive address, the County had reason to suspect that Rivera no longer lived at that address. If the County actually desired to inform Rivera that it was terminating her employment (thereby triggering the deadline for appealing the decision), it would have taken other steps to ensure she received the notice, such as provide Roth with a copy of the notice of termination or inquire of Roth as to Rivera's current address. By failing to take these or other simple steps, the County's efforts failed to satisfy due process.

"Even if the County reasonably believed at the time it mailed the notice of termination that it could apprise Rivera of her termination by mailing the notice only to the Tamara Drive address, it could not reasonably maintain that belief after it failed to receive the return receipt it requested. The purpose for requesting a return receipt is, of course, to provide proof that the letter was received. The absence of a return receipt in this situation indicates that Rivera never received the notice. A reasonable person desirous of actually informing Rivera of her termination who did not receive the

10

requested return receipt would have, at a minimum, inquired of Roth about Rivera's whereabouts. Yet the County did nothing further." (*Rivera I, supra,* E049282 [at pp. 21-22].)

D. *Motion for Attorney Fees*

Following remand, Rivera filed a motion to recover attorney fees under CCP 1021.5 and section 1988. Following a hearing on the motion, the court granted the motion and awarded Rivera a total of $99,665 in attorney fees. In its written order, the court made the following findings:

"1. [Rivera] was the prevailing party in this action pursuant to [section] 1983 against [County], in which the trial Court and the Court of Appeal found that [County] terminated [Rivera]'s public employment in violation of [Rivera]'s constitutional right to due process of law, and is therefore entitled to an award of attorneys' fees pursuant to [section] 1988.

"2. [Rivera] was a successful party in this action which has resulted in the enforcement of an important right affecting the public interest, a significant benefit has been conferred on a large class of persons, the necessity and financial burden of private enforcement are such as to make an award of attorneys' fees appropriate, and such fees should not in the interest of justice be paid out of the recovery, justifying an award of attorneys fees pursuant to [CCP] 1021.5."

The County appealed.

11

III.  DISCUSSION

A.  *CCP 1021.5*

Under the so-called "American rule," each party to a lawsuit must ordinarily pay his or her own attorney fees.  (Code Civ. Proc., § 1021; *Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252, 1257.)  An exception to this rule is CCP 1021.5, which codifies the "private attorney general" attorney fee doctrine established in judicial decisions.  (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 933 (*Woodland Hills II*); *Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1147.)  Under CCP 1021.5, a successful party in an action that "has resulted in the enforcement of an important right affecting the public interest" may be awarded attorney fees if:  (a) the action has conferred a "significant benefit . . . on the general public or a large class of persons"; (b) "the necessity and financial burden of private enforcement" make the award appropriate; and (c) the fees are not paid out of the recovery, if any.

The "fundamental objective of the private attorney general doctrine of attorney fees is '"to encourage suits effectuating a strong [public] policy by awarding substantial attorney's fees . . . to those who successfully bring such suits and thereby bring about benefits to a broad class of citizens."'  [Citations.]  The doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to

12

enforce such important public policies will as a practical matter frequently be infeasible. [Citations.]" (*Woodland Hills II, supra,* 23 Cal.3d at p. 933.)  However, "'[CCP] 1021.5 was not designed as a method for rewarding litigants motivated by their own pecuniary interests who only coincidentally protect the public interest.' [Citation.]" (*LaGrone v. City of Oakland* (2011) 202 Cal.App.4th 932, 946.)

"We will uphold the trial court's decision to award attorney fees under [CCP] 1021.5, unless the court has abused its discretion." (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 578.)  "'"'The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown.  [Citation.]"' [Citations.]" (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.)  An abuse of discretion occurs when the exercise of discretion is predicated upon factual findings that are not supported by substantial evidence.  (See *Borissoff v. Taylor & Faust* (2004) 33 Cal.4th 523, 531.)

We have no trouble concluding that Rivera satisfies the threshold test under CCP 1021.5 that she has succeeded in an action that "resulted in the enforcement of an important right affecting the public interest"; her success in enforcing her constitutional right to due process satisfies this test.  (See, e.g., *Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 318 ["'The determination that the public policy vindicated is one of constitutional stature . . . establishes the first of the . . . elements requisite to the award (i.e., the relative societal importance of the public policy vindicated).'"].)

However, there is not a reasonable basis for finding that the action conferred a "'significant benefit . . . on the general public or a large class of persons.'"  In applying this element, courts are to determine the significance of the benefit and the size of the class benefitting from the action "in light of all the pertinent circumstances, of the gains which have resulted in a particular case."  (*Woodland Hills II, supra,* 23 Cal.3d at pp. 939-940.)  Here, in awarding fees under CCP 1021.5, the trial court explained that while "there is a large component of this action that was directly beneficial in enforcing the rights of the plaintiff, there is also substantial benefit to the public at large, and specifically government employees and employees of the County, in protecting their due process rights."  We disagree.

Initially, we note that one factor in evaluating the significance of the benefit for the public is whether the opinion in the underlying case was published and resulted "in significant appellate precedent."  (*Serrano v. Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1029; see also *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 12 [the decision to publish an appellate opinion "is strong evidence" that the underlying action vindicated an important right]; *Leiserson v. City of San Diego* (1988) 202 Cal.App.3d 725, 737 [publication is "probative of whether the decision clearly vindicates a right where the reason for publication was to announce a rule not found in previously published opinions."].)  This factor does not support Rivera because the opinion vindicating her due process right to notice in this case—*Rivera I*—was not published and therefore has no precedential value.  (See Cal. Rules of Court, rule

14

8.1115(a) [unpublished opinions may not be cited or relied upon by a court or party in any other action].)  Moreover, our prior opinion established no new principles of law; rather, it was based upon a straightforward application of settled law—that notice, to comport with due process, "must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'  [Citation.]" (*Rivera I, supra,* E049282 [at p. 18], quoting *Mullane, supra,* 339 U.S. at p. 314.)

With respect to the size of the class benefitting from the action, *Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629 is instructive.  In that case, the plaintiff was employed as a traffic officer for the California Highway Patrol (CHP).  (*Id.* at p. 632.)  After the CHP terminated her employment, she sued the CHP alleging harassment and various theories of wrongful termination.  (*Ibid.*)  A jury awarded her $250,000.  (*Ibid.*)  The trial court then awarded her $1,008,150 in attorney fees under CCP 1021.5 and the Fair Employment and Housing Act.  (*Flannery v. California Highway Patrol, supra,* at pp. 632-633.)  The Court of Appeal reversed.  The court stated: "Because the public always has a significant interest in seeing that laws are enforced, it always derives some benefit when illegal private or public conduct is rectified. Nevertheless, the Legislature did not intend to authorize an award of fees under [CCP] 1021.5 in every lawsuit enforcing a constitutional or statutory right.  [Citations.]  The statute specifically provides for an award only when the lawsuit has conferred 'a significant benefit' on 'the general public or a large class of persons.'  The trial court

15

must determine the significance of the benefit and the size of the class receiving that benefit by realistically assessing the gains that have resulted in a particular case. [Citation.] [¶] When the record indicates that the primary effect of a lawsuit was to advance or vindicate a plaintiff's personal economic interests, an award of fees under [CCP] 1021.5 is improper. [Citations.]" (*Id.* at p. 635; but see *Graham v. DaimlerChrysler Corp., supra,* 34 Cal.4th at p. 578, fn. 9 ["*Flannery* merely held that a plaintiff who enforces a statutory right is not necessarily entitled to [CCP] 1021.5 fees when the primary effect of the suit is to vindicate an individual economic interest."]; *Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, 400 [same].)

In applying these principles, the *Flannery* court explained that although "plaintiff's lawsuit was based on the important right to be free from unlawful discrimination, its primary effect was the vindication of her own personal right and economic interest. The evidence does not support the trial court's finding that the lawsuit conferred a significant benefit on the general public or on a large class of persons within the meaning of [CCP] 1021.5, and the fee award cannot be upheld based on that statute." (*Flannery v. California Highway Patrol, supra,* 61 Cal.App.4th at p. 637.)

*Flannery* was followed in *LaGrone v. City of Oakland, supra,* 202 Cal.App.4th 932. In that case, an engineer with the Port of Oakland, employed by the City of Oakland, successfully petitioned for a writ of administrative mandamus directing the city to reinstate him to his position with back pay and benefits. (*Id.* at pp. 935, 940.) The trial court denied the plaintiff's motion for attorney fees under CCP 1021.5 and the Court of

16

Appeal affirmed, stating: "[The] action was not initiated in the interest of the general public, but instead as an administrative action to reinstate his employment. The possibility that his lawsuit may have conveyed a cautionary message to the City and Port about their conduct, or that it might cause them to change their practices in the future, is insufficient to satisfy the significant public benefit requirement." (*LaGrone v. City of Oakland, supra,* at p. 946.)

Here, the circumstances that led to the County's due process violation are highly unusual, unique, and unlikely to be presented again. In particular, Rivera had not been working for (and had not received a paycheck from) the County for more than two years, she had moved to a new residence without informing the County of the change, and the County was communicating with Rivera exclusively through her attorney, who had specifically informed the County that she represented Rivera with respect to the County's proposed termination of Rivera. (*Rivera I, supra,* E049282 [at p. 21].) Indeed, we repeatedly pointed out that our conclusion was based upon the particular "circumstances, practicalities, and peculiarities" and "unusual circumstances" in this case. (See *id.* [at pp. 21, 23-24].)

The unusual circumstances of the case were highlighted in our response to the County's argument that it sent the notice of termination in compliance with the procedures described in the MOU. As we explained in *Rivera I*: "[E]ven if we assume the County complied with the MOU, such compliance does not necessarily satisfy the requirements of due process in a particular case. [Citation.] In a more typical

17

employment termination scenario, the termination would likely involve a current employee with whom the County communicates directly. Such an employee would likely keep the employer apprised of a change of address. While the MOU's notice provisions might comport with due process in that scenario, it is the circumstances in this case against which due process must be measured. . . . [U]nder the unusual circumstances present here, merely mailing the notice to a stale, suspect address, is insufficient." (*Rivera I, supra,* E049282 [at pp. 22-23].) Although we held that compliance with the MOU's notice procedures was not enough to satisfy due process under the circumstances in this case, our prior opinion did not invalidate any provision of the MOU or general employment policy of the County.

If the County is presented with a similar situation in the future, it is likely it will be mindful of Rivera's successful petition and our prior opinion. However, because of the unique circumstances in this case and the highly fact-specific basis for both the trial court's decision and our unpublished opinion, we conclude there is no reasonable basis for finding that Rivera's action conferred a "significant benefit . . . on the general public or a large class of persons . . . ." (CCP 1021.5.) Even if there is evidence to support other elements of CCP 1021.5, we conclude that court's decision is without evidentiary support and cannot stand.

B. *Section 1988*

In addition to awarding attorney fees to Rivera under CCP 1021.5, the trial court determined that she was entitled to attorney fees under section 1988. This statute

18

provides, in pertinent part: "In any action or proceeding to enforce [specified civil rights statutes, including section 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

Rivera's right to recover attorney fees from the County under section 1988 depends on whether she prevailed in an action against the County under section 1983. Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."[4]

As we explain below, although Rivera prevailed in her action for a writ of mandate and in establishing that the County terminated her employment without giving her notice that comported with due process, she failed to establish that the deprivation of due process was caused by an official policy or custom of the County. Therefore, she has

---

[4] Rivera did not explicitly plead a cause of action under title 42 United States Code section 1983; her pleading was styled solely as a petition for peremptory writ of mandate and prohibition under Code of Civil Procedure section 1085. In evaluating a claim for fees under title 42 United States Code section 1988, however, courts have held that the allegations of the pleading determine whether a title 42 United States Code section 1983 action was asserted, not how the pleading was labeled. (*Kreutzer v. County of San Diego* (1984) 153 Cal.App.3d 62, 69; *Best v. California Apprenticeship Council* (1987) 193 Cal.App.3d 1448, 1463.)

19

failed to establish a claim against the County under section 1983 or, consequently, the entitlement to recover attorney fees under section 1988.[5]

The question whether a local government, such as a city or county, is a "person" for purposes of section 1983 was addressed in *Monell v. Dept. of Soc. Serv. of City of N.Y.* (1978) 436 U.S. 658 (*Monell*). In that case, a class of female employees sued the City of New York (among others) under section 1983 on the basis that the city "had as a matter of official policy compelled pregnant employees to take unpaid leaves of absence before such leaves were required for medical reasons." (*Monell, supra,* at pp. 660-661, fn. omitted.) By the time the case reached the Supreme Court, there was no dispute that this policy was unconstitutional. (*Id.* at pp. 661-662; see *Cleveland Board of Education v. LaFleur* (1974) 414 U.S. 632, 647-648.)

The Supreme Court held that a municipality was a "person" subject to liability within the meaning of section 1983. (*Monell, supra,* 436 U.S. at pp. 690, 701.) However, the court held that a municipality cannot be liable based on a theory of respondeat superior or vicarious liability (*id.* at pp. 690-691); rather, a municipality can be liable only when "the municipality *itself* causes the constitutional violation at issue." (*City of Canton, Ohio v. Harris* (1989) 489 U.S. 378, 385, citing *Monell, supra,* at pp.

_____

[5] The parties did not discuss this issue in their briefs. We requested and have received supplemental briefs on these two questions: (1) "Whether there is evidence in the record (and in the appellate record filed in *Rivera I*) that supports a determination that the County's violation of [Rivera]'s right to due process was caused by a county policy or custom for purposes of Title 42 United States Code section 1983 . . ."; and (2) "If there is no substantial evidence in the record to support such a determination, whether the award of attorney fees under Title 42 United States Code section 1988 can be affirmed."

694-695.)  That is, the constitutional tort must result from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or a "custom" or "usage" that is so permanent and well-settled as to have the force of law. (*Monell, supra,* at pp. 690-691.)  To constitute such a policy or custom, the court concluded, it must be "made by [the municipality's] lawmakers or by those whose edicts or acts may fairly be said to represent official policy . . . ." (*Id.* at p. 694.)  Because the *Monell* case "unquestionably involve[d] official policy as the moving force of the constitutional violation," the court did not address "what the full contours of municipal liability under [section] 1983 may be." (*Id.* at pp. 694-695.)

The Supreme Court clarified *Monell* in a series of decisions over the ensuing decade.  In *Oklahoma City v. Tuttle* (1985) 471 U.S. 808, a plurality of the Supreme Court explained that a "policy" for purposes of imposing municipal liability under section 1983 "generally implies a course of action consciously chosen from among various alternatives" and is not established by "[p]roof of a single incident of unconstitutional activity . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." (*Oklahoma City v. Tuttle, supra*, at pp. 823-824 (plur. opn. of Rehnquist, J.);[6] see also *Craig v. Floyd County* (11th Cir. 2011) 643 F.3d 1306, 1310 [municipal

---

[6] Although Justice Rehnquist wrote for a four-justice plurality, Justice Brennan, who wrote separately, agreed with the plurality on this point.  (See *Oklahoma City v. Tuttle, supra,* 471 U.S. at pp. 831-832 (conc. opn. of Brennan, J.); see also *Brown v. City of Pittsburgh* (3d Cir. 2009) 586 F.3d 263, 293, fn. 36.)

liability may not be imposed based upon an isolated incident]; *Trevino v. Gates* (9th Cir. 1996) 99 F.3d 911, 918 [municipal liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out the policy].)

In *Pembaur v. City of Cincinnati* (1986) 475 U.S. 469 (*Pembaur*), a plurality explained: "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. [Citation.] The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." (*Pembaur, supra,* at pp. 482-483 (plur. opn. of Brennan, J.), fns. omitted.)

In footnote 12 of *Pembaur*, the plurality illustrated this point with the following hypothetical. "Thus, for example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability . . . . [I]f county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to

22

hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board." (*Pembaur, supra,* 475 U.S. at p. 483, fn. 12; see also *Harman v. City and County of San Francisco* (2006) 136 Cal.App.4th 1279, 1298 ["discretionary authority to hire or promote employees does not alone give rise to municipal liability, even though the decision maker may have a final power to make such decisions."].)

In *City of St. Louis v. Praprotnik* (1988) 485 U.S. 112 (*Praprotnik*), a plurality of the high court stated that the facts in that case "resemble" the hypothetical facts in *Pembaur*'s footnote 12. (*Praprotnik, supra,* at pp. 129-130 (plur. opn. of O'Connor, J.).) The plaintiff in *Praprotnik* worked for the City of St. Louis's Community Development Agency. (*Id.* at p. 114.) After he was suspended, he appealed to the city's civil service commission, which reversed the suspension and awarded the plaintiff back pay. (*Id.* at p. 115.) He was subsequently transferred to another position and, later, "laid off." (*Id.* at pp. 115-116.) The plaintiff sued the city under section 1983, alleging that the transfer was in retaliation for his earlier appeal and, therefore, in violation of his First Amendment rights, and that his discharge violated his constitutional right to due process. (*Praprotnik, supra,* at p. 116.)

The *Praprotnik* court explained that the city could not "be held liable under [section] 1983 unless [the plaintiff] proved the existence of an unconstitutional municipal policy." (*Praprotnik, supra,* 485 U.S. at p. 128.) "Locating a 'policy,'" the court later explained, "ensures that a municipality is held liable only for those deprivations resulting

23

from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." (*Bd. of County Com'rs of Bryan County v. Brown* (1997) 520 U.S. 397, 403-404 (*Brown*).) Furthermore, it is not enough to prove that the employee's supervisors, endowed with discretion to transfer and fire employees, acted in violation of the constitution (*Praprotnik, supra,* at p. 128); the plaintiff must prove that the municipality's policy *caused* the supervisors to violate the employee's constitutional rights (*id.* at p. 122).

In rejecting the plaintiff's claim in *Praprotnik*, the court noted that the plaintiff did "not contend that anyone in city government ever promulgated, or even articulated," an unconstitutional municipal policy. (*Praprotnik, supra,* 485 U.S. at p. 128.) Even if the plaintiff established that his transfer and discharge were part of a scheme to retaliate against him, this "says nothing about the actions of those whom the law established as the makers of municipal policy in matters of personnel administration. The [city's] Mayor and Aldermen enacted no ordinance designed to retaliate against [the plaintiff] or against similarly situated employees. On the contrary, the city established an independent Civil Service Commission and empowered it to review and correct improper personnel actions." (*Ibid.*) Finally, the court rejected arguments that the individuals who made the decision to transfer and lay off the plaintiff were authorized to establish employment policy for the city with respect to transfers and layoffs. (*Id.* at p. 129.)[7]

_____

**7** Although *Praprotnik* was a plurality decision and *Pembaur* was a plurality decision in part, the principles announced in those decisions have been treated as guiding precedent in subsequent United States Supreme Court decisions. (See *Harman v. City*

*[footnote continued on next page]*

24

*Praprotnik* was followed in *Sandoval v. Los Angeles County Dept. of Public Social Services* (2008) 169 Cal.App.4th 1167.  In that case, the plaintiff, Sandoval, was employed by the Los Angeles County Department of Public Social Services (DPSS).  (*Id.* at p. 1172.)  In 2001, after his supervisor made certain charges against him, Sandoval "went on leave, and sought workers' compensation benefits."  (*Id.* at p. 1173.)  While on leave, he was suspended and then discharged by DPSS.  (*Ibid*.)  Sandoval successfully appealed the discharge to the civil service commission, which directed that he "be accorded 'conditional reinstatement'" and made "'whole.'"  (*Ibid*.)  While on leave, Sandoval lived initially with his parents, but later moved, twice.  (*Ibid*.)  His parents' address, however, remained the "'address on record'" with DPSS.  (*Id.* at p. 1175.)  DPSS sent three notices to Sandoval at his parents' address requesting that he report for work.  (*Id.* at pp. 1174-1175.)  The third notice stated that if Sandoval did not report to work by a certain date, he would be deemed to have resigned.  (*Id.* at p. 1175.)  Sandoval never received those notices and did not report by the specified date.  (*Id.* at p. 1174.)  DPSS terminated his employment.  (*Ibid.*)

Sandoval sued DPSS alleging a variety of claims, including denial of due process under section 1983.  (*Sandoval v. Los Angeles County Dept. of Public Social Services, supra,* 169 Cal.App.4th at pp. 1171-1172.)  In particular, he asserted that DPSS failed to

_____

*[footnote continued from previous page]*
*and County of San Francisco, supra,* 136 Cal.App.4th at p. 1297, fn. 6, citing *Jett v. Dallas Independent School Dist.* (1989) 491 U.S. 701, 737 and *Brown, supra,* 520 U.S. at p. 406.)

comply with due process when it sent notices to his parents' address without trying to contact him in any other way. (*Id.* at p. 1182.) The trial court granted DPSS's motion for nonsuit on this claim and the Court of Appeal affirmed. (*Id.* at p. 1183.) On appeal, Sandoval pointed to evidence that the decision to terminate his employment was made pursuant to a "'delegation of powers'" within DPSS and was ratified by DPSS's chief official, Bryce Yokamiso. (*Ibid.*) The court rejected this claim. The court stated that Sandoval's "evidence is insufficient to establish liability under United States Code section 1983 on theories of delegation or ratification. Under California law, the county's board of supervisors is authorized to promulgate rules and policies regarding County employees. [Citation.]" (*Ibid.*) The evidence indicating a delegation of authority to fire him, the court explained, did not suggest "that the board of supervisors delegated its policymaking authority to Yokamiso (or his subordinates) or itself ratified Sandoval's termination." (*Ibid.*)

In applying these principles here, we begin by noting that the trial court found, and we agreed, that Rivera was deprived of her constitutional right to due process when her employment was terminated without being provided with notice reasonably calculated, under all the circumstances, to apprise her of the termination and her right to a hearing. (*Rivera I, supra,* E049282 [at pp. 21-22].) Although Rivera was entitled to the remedy she sought and obtained for that wrong—viz., a hearing on the second termination—the deprivation of due process does not necessarily give rise to the County's liability under section 1983. As *Monell* and its progeny make clear, it is not enough for Rivera to show

26

that her supervisors, though County employees, deprived her of her constitutional right to due process (see *Brown, supra,* 520 U.S. at p. 404); Rivera was required to prove that the constitutional tort against her was caused by an official policy or a custom having the force of law (*Monell, supra,* 436 U.S. at pp. 690-691; *Praprotnik, supra,* 485 U.S. at p. 128).

Here, Rivera did not allege, and the record does not disclose, any evidence whatsoever that her second termination was caused by any County policy or custom, or that the decision to terminate her employment was made by someone with relevant final policy-making authority. She supported her petition for writ of mandate with her declaration, the declaration of her counsel, Diane Roth, and voluminous copies of correspondence between Rivera's counsel and County employees. There is nothing in the declarations or the correspondence that suggests that Rivera's second termination, or the failure to provide her with adequate notice of the termination, was caused by any unconstitutional County policy or custom. Indeed, Rivera does not even identify an offending policy or the lawmaking body or individual with the pertinent final policy-making authority. The single occurrence of unconstitutional treatment toward her, without more, is insufficient to establish municipal liability. (*Oklahoma City v. Tuttle, supra,* 471 U.S. at pp. 823-824, 831-832; *Trevino v. Gates, supra,* 99 F.3d at p. 918.)

Nor did Rivera identify such a policy in the moving papers she filed in support of the petition. In essence, she argued that she was entitled, as a matter of due process, to notice of her termination and an opportunity for an evidentiary hearing, and the "County

27

gave her neither." Although we agree with that conclusion, this does not establish that the deprivation of due process was caused by a County policy. (See *Kreutzer v. County of San Diego, supra,* 153 Cal.App.3d at p. 70 [although county employee could be individually liable for deprivation of due process, the plaintiff's claim against the county failed because he "did not allege the denial of his hearing was due to any policy, regulation, ordinance, or custom of the County . . . ."].)

In her supplemental brief on this issue, Rivera points to the fact that the County mailed the second notice of termination in accordance with the MOU and the County's rules and practices. Indeed, she emphasizes that the County argued against her petition based on the fact that the County followed its rules and practices with respect to the mailing of notices. Rivera's argument is misplaced. The question is not whether the County followed its policies when it mailed its notices to Rivera's last known address or even whether following such polices was enough to constitute due process (in this case it was not), but whether the County's policies caused County employees to not take further, "reasonably calculated" steps to apprise Rivera of her termination. (See *Praprotnik, supra,* 485 U.S. at p. 122 [municipal governments "should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights"]; *City of Canton v. Harris, supra,* 489 U.S. at p. 385 [there must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation].) Rivera points to nothing in the MOU or to any County policy or custom that prevented County employees from taking such further steps. For example, there is

28

nothing in the MOU or other County policy that would prevented County employees from providing Roth with the notice of termination.[8]

Rivera argues that we are precluded from addressing the County's immunity under *Monell* and its progeny because the County did not raise this issue in the trial court. It is true that "[a]ppellate courts generally will not consider matters presented for the first time on appeal." (*Franz v. Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 143.) "However, the doctrine of waiver does not apply if the issue . . . is one of public interest or the due administration of justice, and involves a pure question of law on undisputed facts." (*Fox v. State Personnel Bd.* (1996) 49 Cal.App.4th 1034, 1039; see also *Ward v. Taggart* (1959) 51 Cal.2d 736, 742 [a new theory may be asserted on appeal when the issue presents a question of law only].) This exception to the waiver rule applies here.

The County's liability for Rivera's attorney fees under section 1988, which in this case necessarily implies that the County has a policy or custom that caused the deprivation of an employee's constitutional right to due process, is plainly a matter of public interest; if such a policy or custom exists, it should be identified and stopped. In addition, the facts are not in dispute. Any factual issues regarding the parties' conduct were litigated in the underlying trial court proceeding and settled in the trial court's

---

[8] If the MOU or a County policy provided that notices shall be given in a certain manner *and no other*, then Rivera would have a stronger argument that the policy caused County employees to violate her constitutional right. Rivera has not, however, referred us to any such language.

findings and our decision in *Rivera I*. Rivera does not suggest that she could have adduced any additional facts if the County had expressly raised a *Monell* defense.

Furthermore, the question of whether the constitutional tort committed against Rivera was caused by a County policy or custom is an element of Rivera's section 1983 claim upon which she had the burden to plead and prove. (*City and County of San Francisco v. Ballard* (2006) 136 Cal.App.4th 381, 406-407; *Bach v. County of Butte* (1983) 147 Cal.App.3d 554, 569; *Torraco v. Port Authority* (2d Cir. 2010) 615 F.3d 129, 140; *McTernan v. City of York* (3d Cir. 2009) 564 F.3d 636, 658.) The failure to allege or prove this element is a failure to state or establish a cause of action, which may be raised for the first time on appeal. (See Code Civ. Proc., § 430.80, subd. (a), 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 958, p. 372; *Walton v. City of Red Bluff* (1991) 2 Cal.App.4th 117, 130.)

In support of her waiver argument, Rivera cites to *Kelly v. City of Oakland* (9th Cir. 1999) 198 F.3d 779. In that case, the defendant City first raised its *Monell* defense in a reply brief supporting a motion for new trial. (*Kelly v. City of Oakland, supra,* at p. 785.) The Ninth Circuit stated: "A defendant in a civil action cannot wait until the last brief before the district court to present a defense which, if properly placed in issue, would have affected the course of the jury trial." (*Ibid.*) This suggests that the issue could have been raised at that late date if it would *not* have affected the course of the trial—a principle consistent with the California authorities cited above. Here, there is no reason for us to believe that the course of the trial in this case would have been affected if

30

the *Monell* argument had been asserted below. Moreover, the *Kelly* case added that there was "some evidence" in that case supporting the city's liability. (*Kelly v. City of Oakland, supra,* at p. 785.) Here, by contrast, there is no evidence that the denial of due process Rivera suffered was caused by any County policy or custom. For all of these reasons, we reject Rivera's waiver argument.

Because there is no substantial evidence in the record to support a finding that the County's deprivation of Rivera's right to due process was caused by any County policy or custom, she has failed to establish the County's liability under section 1983 and, therefore, any right to recover attorney fees under section 1988.

Rivera asserts that the County cannot challenge her right to recover fees under section 1988 because the trial court's judgment established her entitlement to fees under that statute; the only issue to be determined by motion was the *amount* of fees. Rivera points to the provision in the judgment that "[t]he County shall pay [Rivera's] attorneys fees pursuant to 42 U.S.C. § 1988, et seq., in an amount to be determined by Motion for Attorney Fees to be filed by [Rivera] . . . ." Although the *amount* of fees remained to be determined, Rivera contends that the court's statement regarding the *entitlement* to fees "was . . . final" and is no longer subject to challenge.

This assertion, made for the first time in Rivera's response to our request for supplemental briefing, is offered without citations to support it. Nor was it initially clear what legal theory Rivera was relying upon. In a petition for rehearing, Rivera clarifies

31

that the argument is based on the law of the case doctrine. This doctrine does not apply here.

"The law of the case doctrine states that when, in deciding an appeal, an appellate court 'states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal . . . .' [Citations.]" (*Kowis v. Howard* (1992) 3 Cal.4th 888, 892-893; see generally 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 459, pp. 515-517.) In *Rivera I*, we had no occasion to decide, and did not address, any issue regarding the right to attorney fees; the matter was simply not raised. Accordingly, we stated no opinion or rule of law on that issue. The law of the case doctrine, therefore, has no application to Rivera's argument.[9]

Indeed, the court's determination in the original judgment regarding the entitlement to attorney fees could not have been challenged in the appeal from the judgment; rather, the entitlement to fees could be challenged only in an appeal from the postjudgment order setting the amount of fees. (See *P R Burke Corp. v. Victor Valley Wastewater Reclamation Authority* (2002) 98 Cal.App.4th 1047, 1053, 1055 [Fourth Dist., Div. Two] (*Burke*).) In *Burke*, the trial court entered a judgment stating that the defendant "'shall be entitled to its costs and attorney's fees . . . .'" (*Id.* at p. 1051.) The

---

[9] We had originally perceived that Rivera's argument was based on a theory of collateral or direct estoppel. In her petition for rehearing, she states that this perception was "mistaken[]." Although she clarified her argument in the petition, she provided no authority for how the law of the case doctrine could apply here.

defendant subsequently filed a motion for attorney fees and asserted that the trial court had already determined it was entitled to the fees. The plaintiff opposed the motion and challenged both the entitlement to and the amount of fees. (*Ibid*.) The trial court awarded defendant its attorney fees in the amount requested. (*Id.* at p. 1052.) The plaintiff filed a notice of appeal, which was timely as to the ruling on the attorney fee motion, but untimely as to the original judgment. On appeal, the defendant argued that its entitlement to fees, having been determined in the judgment that had become final, could not be challenged in the appeal from the postjudgment order determining the amount of the fees. (*Ibid*.)

In *Burke,* this court rejected the defendant's argument and held "that an order determining the entitlement to attorney's fees, but not the amount of the fee award, is interlocutory. This is true even if such an order is contained in what is otherwise an appealable judgment. It follows that, *in an appeal from a postjudgment order awarding attorney's fees, we may review the entitlement to, as well as the amount of, the fees awarded.*" (*Burke, supra,* 98 Cal.App.4th at p. 1055, italics added.)[10] *Burke* has been

---

[10] *Burke*'s holding was based in part on a "policy against piecemeal appeals." (*Burke, supra,* 98 Cal.App.4th at p. 1054.) This is consistent with rule 3.1702 of the California Rules of Court, which contemplates a single hearing and ruling on a motion for attorney fees "when the court determines entitlement to the fees, the amount of the fees, or both, whether the court makes that determination because the statute or contract refers to 'reasonable' fees, because it requires a determination of the prevailing party, or for other reasons." (Cal. Rules of Court, rule 3.172(a); see also *California Correctional Peace Officers Assn. v. Virga* (2010) 181 Cal.App.4th 30, 45 [parties could not make seriatim motions for attorney fees because they "were obligated to put forth all of their reasons for an award of attorneys' fees when they made their initial request."].)

33

followed on this point by other courts. (See *Moore v. Kaufman* (2010) 189 Cal.App.4th 604, 608-609, fn. 2; *City of Santa Paula v. Narula* (2003) 114 Cal.App.4th 485, 492.) Therefore, not only is there no *bar* to raising the issue of Rivera's entitlement to fees in this appeal, the issue could *only* have been raised in this appeal. We therefore reject Rivera's argument.

Moreover, it is clear from our record and the briefs on appeal that the parties understood that Rivera's entitlement to fees was still open to determination when she moved for attorney fees on appeal. In her motion for attorney fees, Rivera did *not* assert that the trial court had previously decided her entitlement to fees, but rather based her right to recover attorney fees on statutory grounds before turning to issues concerning the amount of fees. In response, the County argued that Rivera was not entitled to recover fees under section 1988 or CCP 1021.5. In her reply, Rivera addressed these arguments on the merits without contending that the issue of her entitlement to fees had been previously decided. On appeal, the County devoted the largest portion of its opening brief to arguments that Rivera was not entitled to recover attorney fees based upon the law governing CCP 1021.5 and section 1988. In response, Rivera asserted her entitlement to fees under these statutes on the merits without mentioning that the trial court hearing the motion or this court was bound by the original judgment. She cannot, therefore, claim any surprise by our consideration of the entitlement issue in this appeal.

## IV.  DISPOSITION

The order granting Rivera's motion for attorney fees is reversed.  Each party shall bear their respective costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING
　　　　　　　　　　　　　　　　　　　　　　J.

We concur:

RAMIREZ
　　　　　　　　P. J.

MILLER
　　　　　　　　J.

35